# CASE

# SUPREME JUDICIAL COURT,

FOR THE

# COUNTY OF PENOBSCOT,

# 1849.

MOOR, *in Equity, versus* VEAZIE *& al.*

Constitutional law — monopoly — injunction — rights of riparian proprietors — action — construction of statute.

The riparian proprietors do not have the entire interest in the waters of a river, but the whole community have rights therein, which entitle them to regulate its public use, and these rights may be exercised by the Legislature as the agents of the public.

*Semble,* that an Act of the Legislature of Maine granting to certain persons the *exclusive* right to navigate certain portions of the Penobscot river, above tide waters, for a certain time, is constitutional.

Where any party claimed to exercise a right granted by an act of the Legislature, clearly unconstitutional, the court would not grant an injunction in his favor. The court would not refuse an injunction, if nothing appeared *prima facie,* against its constitutionality, *semble.*

An act of the Legislature granted to certain individuals the sole right of navigating the Penobscot above Oldtown by steamboats, for twenty years, on condition (1,) that the navigation of said river in certain specified parts should be improved; (2,) that a steamboat should be built and run over the route; (3,) that a canal or railroad should be built around Piscataquis falls within seven years. *Held,* that, inasmuch as the act did not prescribe the mode of determining when the condition had been complied with, the actual running of a boat on the route prescribed must be considered as the best proof of the performance of the conditions.

Moor v. Veazie.

Questions relating to the sufficiency of such steamboat, as to size, power or the like, are not to be tested in suits between individuals.

The "twenty years" specified in the charter, commence running after the river has been so far improved as to be actually navigated by steam power, and the required rail road has been built and used.

In certain cases, before an injunction can be granted, the complainant should have had his right determined at law, or have shown it to have been of long continued existence and exercise. But where a State has authority to grant a right, and the grant is made upon conditions which are complied with, it is equivalent to the establishment of the right by a trial at law. The only reason under such circumstances for refusing an injunction, would be the unconstitutionality of the grant.

If, in improving the navigation of the river under the Act above referred to, it becomes *necessary* to build a dam, which will have the effect of preventing the passage of boats, rafts, &c., no damages can be recovered against the grantee, except by riparian proprietors upon whose land the dam is actually constructed. The presumption will always be that such dams are *necessary* and are erected in good faith.

BILL IN EQUITY for an injunction, and for relief.

The bill alleges that, on the 30th day of July, 1846, an Act of the Legislature was passed, in substance as follows; viz : —

" An Act to promote the improvement of the navigation of the Penobscot river : — Be it enacted by the Senate and House of Representatives in Legislature assembled, as follows : —

" SECT. 1. William Moor and Daniel Moor, jr., their associates and assigns, are hereby authorized to improve the navigation of the Penobscot river, above Oldtown ; and for this purpose are authorized to deepen the channel thereof ; to cut down and remove any gravel or ledge bars, or rocks, or other obstructions in the bed thereof ; to erect in the bed, and upon the shore or bank of said river suitable dams and locks with booms, piers, abutments, breakwaters and other erections to protect the same ; to build upon the shore or bank of said river any canal or canals, to connect the navigable parts of said river, or, (in case it should be deemed the preferable mode of improvement,) any rail road, for the like purpose.

" SECT. 2. They are authorized to take and hold so much land along the bank and shore of said river, or in the bed

thereof, as may be necessary for the location, construction and repair of their aforesaid improvements, and to take and use the gravel, stone and earth upon the land, so taken ; and the damages for the real estate so taken, when not agreed upon by the parties, shall be ascertained and determined by the County Commissioners of Penobscot county, under the same limitations and restrictions as are by law provided, in case of damages, in laying out highways ; and the damage for flowage created by any dam erected for the above specified purpose, shall be ascertained and determined in the same manner as is provided in the one hundred and twenty-sixth chapter of the Revised Statutes, for flowage created by mill-dams ; provided that no claim for damage shall be sustained, unless made and prosecuted within two years from the time of the alleged injury.

" SECT. 3. The above grant is upon the condition, that the said William Moor and Daniel Moor, jr., their associates and assigns, shall, within seven years from the date hereof, improve the navigation of said river, from Oldtown to Piscataquis falls, and from Piscataquis falls to the foot of the Five Island Rips, and shall build and run over said route, a steamboat; and shall within said seven years, build a canal and lock round said falls, or a rail road to connect the route above said falls, with the route below said falls.

" SECT. 4. If said William Moor and Daniel Moor, jr., their associates and assigns, shall perform the conditions of this grant as contained in the last preceding section, the sole right of navigating said river by boats propelled by steam, from said Oldtown, so far up as they shall render the same navigable, is hereby granted to them for the term of twenty years from and after the completion of the improvement, as provided in the third section of this act. *Provided, however*, that the said William Moor and Daniel Moor, jr., their associates and assigns, in the exercise of said right of navigation, or in the erection of works they may make to promote the same, shall not obstruct the running of any logs, rafts or lumber down said river, which are usually driven or floated thereon, and, *provided, also*, that all boats, not propelled by steam, which may be used for

transportation on said river, shall be allowed to pass the locks and other improvement screated in pursuance of this Act, by paying reasonable rates of toll, which may be fixed by the Legislature after the said improvements are completed as provided in section third.

" Sect. 5. The said Wm. Moor and Daniel Moor, jr., their associates and assigns, are hereby created a body corporate by the name of the Penobscot River Navigation Company, with the powers incident to corporations described and defined in the seventy-sixth chapter of the Revised Statutes, and at common law, *provided*, that they shall at any time during the continuance of the above grant, elect by the vote of a majority in interest, and proceed to organize under and according " to the provisions of said chapter of the Revised Statutes."

The bill then alleges *that*, before the passage of said act, said Penobscot river, between the termini named in said act, had never been navigated by boats propelled by steam, nor by any other boats for the transportation of merchandize and passengers, except by small scows, the batteaux of the lumbermen, and the birch canoe of the Indians, nor was it deemed practicable for steam navigation; *that* the grantees, having explored the river, and believing the impediments to its navigation by steam, might be, though at a great expense, removed or surmounted, applied to the Legislature for a grant to make the improvements; *that* the grantees considered, under said grant, that they were vested, exclusively with the right to improve the navigation, both by removing obstructions, and erecting artificial works to effect that object; and also with the right, in exclusion of all other persons, to navigate the river with boats propelled by steam, for the transportation of passengers and freight for hire, above Oldtown falls, so far up as they should, during the continuance of their grant, have made improvements, such as would enable the boats to go.

The bill then alleges, *that* the grantees and their associates proceeded to the work, and made great improvements upon the river, [specifying somewhat in detail their character, extent

and localities,] so that the river became navigable for steamboats for a number of months in each year, during which it would, without such improvements, have been impassable; *that* they erected a rail road, two miles in length, around the Piscataquis falls, so as to connect between the steamboats below and those above the falls; *that* they erected five dams near the head of said falls, necessary for improving the river, and for enabling the plaintiff's boats to approach nearer to each other at said falls; *that* four of said dams are erected upon the plaintiff's own land, and one of them, as he is informed, is upon the land of said Veazie, purchased by him, as the plaintiff believes, with a design to defeat the improvement by the plaintiff, of said river for said purposes; and *that* said Veazie has openly avowed his intention to tear said dam away, though built, as the plaintiff supposes, under the lawful authority of the charter; *that* the grantees and their associates erected two steamboats, of suitable description for operating on said river to transport passengers and freight, and commenced running them on the 27th of May, 1847, and have ever since continued to run them, with some unavoidable interruptions, except when prevented by the ice; and *that*, in all respects, the conditions of the grant have been performed by the grantees and their associates. The bill alleges also, that prior to any of the proceedings of the defendant hereinafter complained of, the plaintiff had become assignee and sole owner of the boats and erections aforesaid, and of the franchise granted by the charter.

The bill then alleges, that the grant is a contract between the State and himself, fully performed and executed on his part, and he is thereupon entitled to have and enjoy the exclusive right of navigating said river, from Oldtown upwards, in boats propelled by steam, for the term of time mentioned in the grant.

The bill then complains, *that* the defendants, with a full knowledge of the facts above stated, have, without leave of the plaintiff, built a boat propelled by steam, and set her into use between Oldtown and Piscataquis falls, a distance of about

twenty-five miles, by transporting passengers and freight and receiving the emoluments thereof, using the channel and improvements made by the plaintiff as above stated, on that part of the route; *and* that said defendants openly avow their determination to run their said boat over and upon said route, and to erect another boat of the same kind, and employ her in the same way; and *that* for full redress and prevention against the wrongs aforesaid the plaintiff has no adequate remedy at law.

Wherefore the plaintiff prays, *that* summons may issue to the defendants, &c.; *that* an account may be taken, under direction of the court, of all moneys received by the defendants or by others for their use, for the transportation of passengers and freight as aforesaid; *that* they be enjoined from the further employment of the said boat, or any other steamboat for said purposes upon said route, and from tearing away or removing said dam; and *that* such further relief may be adjudged for the plaintiff as the case requires.

This bill was presented to the court, at its session, in the county of Franklin, for an immediate injunction. Whereupon it was ordered, that notice be given to the defendants, to appear before the court then next to be held in the county of Somerset, to show cause, &c.

At the term held in Somerset, *A. G. Jewett*, for the defendant, Veazie, read an affidavit of Veazie, stating that he could not be then ready for trial, and asking for delay.

*Kelley*, objected to delay, and cited *Steamboat Company* v. *Livingston*, 3 Cowen; *Gibbons* v. *Ogden*, 17 Johns. 438.

SHEPLEY, C. J., orally. — These proceedings are but preliminary, designed to be merely of temporary effect, to protect apparent rights. In such cases, it has been usual to give a hearing before the granting of an injunction. The plaintiff alleges a right in himself to the exclusive navigation of a part of the Penobscot river, derived from an Act of the Legislature, and that Act he has exhibited to us; and he alleges that his rights have been invaded by the defendants, and that they are openly threatening to continue the aggression.

The question is, whether he shall be protected, under the Act, *until* the *right* can be decided. The *important points* of the case are to come up, not on this incidental question, but on the final hearing, On such a preliminary hearing, the court would not decide whether an Act of the Legislature is or is not in conflict with the Constitution. It is not, therefore, perceived that much time can be requisite for preparation, to show cause against the prayer of the bill.

Should an injunction be granted here, the respondent might move to dissolve it, at the Penobscot session.

The case may be suspended, the preliminary hearing to be had at the next term in the county of Penobscot, in which the parties reside.

THE case accordingly came on, at the Penobscot session.

*W. P. Fessenden, G. F. Shepley* and *D. T. Jewett,* for the defendants.

*Kelley,* for the plaintiff, inquired whether the answers were put in.

*Fessenden.* This is an application for an injunction. It is to be heard, before any answer filed. The plaintiff must show enough to make out a case.

After some discussion, it was directed by the court, *that* the whole evidence on both sides should be read; *that* the plaintiff's counsel should then present his points, introduce his authorities and argue his case; *that* then the defendants' counsel should pursue a similar course, after which the plaintiff should be entitled to reply strictly. The testimony was accordingly heard. So far as material, the facts established by it will appear in a subsequent part of this report.

*Kelley,* for the plaintiff.

This court has jurisdiction. R. S. ch. 96, § 11; 2 Story's Eq. § 925, 926, 927, 928. The plaintiff's charter, § 1 and 2, gives broad powers but does not require the grantees to execute them all. Sec. 3 contains the conditions. But they are conditions subsequent. No man can interfere with the plain-

tiff's proceedings, any more *before* the condition is performed, than *afterwards.*

No charter is to be considered forfeit, till so decided by competent authority. 6 Cow. 23. The non-compliance with the provisions may be waived by the Legislature. 9 Wend. 351. It does not, therefore, operate a dissolution, until so declared by judicial decision. 5 Mass. 230 ; 12 Conn. 7.

The Legislature had authority to grant the charter. 7 Pick. 371.

There was no failure of performance on the plaintiff's part, but if there were, it is no protection to the defendants. The charter is good till revoked. Besides, the conditions were but subsequent ones. The plaintiff is allowed many years in which to perform. It is for the Legislature, not the defendants, to fix the length of time. Had the dams injured any person in the passage of his rafts, he might indeed complain, still the plaintiff's right to navigate the river by steam would not thereby be vacated, but the defendants were not injured. They are mere strangers.

Upon the question, whether the court will exercise its benign authority of injunction, I cite *U. S. Bank* v. *Osborne,* 9 Wheat. 738 ; *Turnpike Corp.* v. *Ryder,* 1 Johns. Ch. Ca. 610 ; *Charles River Bridge* v. *Warren Bridge,* 6 Pick. 376 ; *Livingston* v. *Van Ingen,* 9 Johns. 506 ; *Gibbons* v. *Ogden,* 17 Johns. 488 ; *Universities* v. *Richardson,* 6 Ves. 689.

*G. F. Shepley,* for defendants.

1. Before the right is determined at law, or unless the party has been long in possession, the court will grant no injunction for a private nuisance, except when irreparable injury would otherwise occur. *Whitehouse* v. *Hyde,* 2 Atk. 390 ; *Brown's case,* 2 Ves. Sen'r, 414 ; *Att'y General* v. *Doughty,* 2 Ves. Sen'r, 453 ; *Van Bergen* v. *VanBergen,* 3 Johns Ch. 283 ; *Att'y General* v. *Nicholl,* 16 Ves. Jr. 338 ; *Gardiner* v. *Newburgh,* 2 Johns. Ch. 162 ; *Utica Ins. Co.* v. ————, 2 Johns. Ch. 379 ; *Reed* v. *Gifford,* 6 Johns. Ch. 319 ; Eden on Injunc. 167 ; 3 Atkins, 21 ; 5 Metc. 118 ; 17 Maine, 292 ;

6 Johns. Ch. 46. In this case there is no pretence that any irreparable loss to the plaintiff can occur.

2. Has the court jurisdiction? Full equity powers have not been granted to it. In most of the cases cited, the courts declare the jurisdiction to be concurrent at equity *and* at law. But in this State, if there be a remedy *at law*, there is none at *equity*. R. S. 164, § 12.

The court does not possess the right, except under the head of " private nuisance." Here was no such nuisance, for there is no exclusive right in the plaintiff, until the conditions are performed.

3. Such must be the construction of the grant.

The exclusive right of twenty years does not commence, till a complete performance by the plaintiff. Till such performance, there can be no exclusive rights.

4. As to the situation of the parties, I refer to 3 Dan. Ch. Pr. 1859, 1860, citing 2 Bland, 461.

The plaintiff's remedy, if any, is at law. The defendants are of ability to respond in damage. But look at the other side.

The defendants' boat property is of a hazardous kind ; an injunction would preclude them from prosecuting any action at law, and they would be without remedy for the injurious operation of the injunction.

As to the circumstances to call for an injunction, I cite 18 Eng. Ch. R. 299 ; 3 Meri. 621.

5. Apart from the question of constitutionality, I may suggest, under the head of *doubt* as to the *expediency* of granting an injunction, that the Act is inoperative ; because the thing, attempted to be granted, did not belong to the State.

The riparian proprietor of land, covered by water, not navigable, has the sole use of it, consistent with the right of individuals of the public, for a way over it. The State, therefore, had no right to the land, which the Legislature could dispose of to the grantees of the charter. Hargrave's Law Tracts, found in 6 Cowen, 518 ; and Hale's Tract, *De Mare*, in 6 Cowen, 536, in note ; *Commonwealth* v. *Chapin*, 5 Pick.

199 ; *Berry* v. *Carle,* 3 Greenl. 273 ; 17 Johns. 595 ; Angell on Water Courses, 2, 16, 17.

(*Moor,* the plaintiff. I rely on the case, *Spring* v. *Russell,* 7 Greenl. 273.)

*Shepley.* The right of passing over fresh rivers is an individual right, not one belonging to the public. It is like that of any other highway.

The case of *Spring* v. *Russell* was on a statute, which secured compensation to those injured. And such rights as the plaintiff claims were never before granted, except on the principle of *private property taken for public use,* on compensation paid.

*A. G. Jewett,* for the defendants.

The plaintiff must show that the land he takes is necessary to the making of the improvement. The 4th section of his charter requires that he should render the river navigable. He has no exclusive rights above where that has been done.

The improvements were to be made, not for the plaintiff alone, but for the public. Before the rail road was built, the defendants were rightfully running their boat.

[The counsel then examined the testimony, to show that the plaintiff had not fulfilled the conditions of his charter, and contended, therefore, that his rights had not been invaded.]

*W. P. Fessenden,* for the defendants.

1. Prior to the charter, the defendants had a perfect right to navigate the river by steam, though they had never used it. The object of the charter was to take away this right. The Legislature had no more authority to give exclusive rights to steamers, than to rafts or gondolas.

It struck me with some surprise when the court, at the presentation of this case at Somerset, intimated that on the preliminary hearing they would not decide as to the constitutionality of a legislative Act. Such has not been the practice. The cases already cited, *Gardiner* v. *Newburgh,* 2 Johns. Ch. 162, and *Livingston* v. *Van Ingen,* 9 Johns. 506, show that the court will *not enforce* an unconstitutional law. Even

on the preliminary hearing, the court will examine whether the plaintiff's right is clear and free from doubt.

But, in submission to the views of the court, I proceed on the assumption that the constitutionality of the charter is not now to be discussed.

2. What is the true construction of the grant? Upon its face, no provision is made for remedy to persons injured under it. Does it immediately and from its date, exclude all but the grantees from the navigation of the river? We say it does not. Its language forbids such a supposition. It is to become operative, only when certain acts shall have been done by the plaintiff. Whether he has done them, is a question of fact.

The statute concerning nuisances, chap. 164, sect. 12, provides for the trial of such questions by a jury. Will the court say the only object of the Act was to get a steamboat upon the river? Was it not rather to cause improvements to be made for the use of the public? "To promote the improvement of the navigation of the Penobscot river," is the very title of the Act. The contemplated improvements have not been made. Common boats and batteaux cannot go there. We contend that the grant never vested in the plaintiff, because its conditions were not complied with.

The Act authorizes the making of dams with locks, *or* a rail road at the falls. The plaintiff has made both; that is, a rail road for a part of the way, and dams for the residue. This was unauthorized.

There is also a provision that the grantees are not to obstruct the passage of rafts. The proof is, that the plaintiff has done so. But whether the proof is or is not such, he can have no vested rights, till the conditions have been all performed, and *proved* to have been performed.

He has built a dam upon the defendants' land, yet has not ventured to say in his bill, that the dam was necessary. Cannot the owner of the land raise the question, whether the plaintiff has performed the condition of his grant? I submit that the court cannot rightfully grant the injunction, and jeopard so much of the defendants' property, until it be

established, that all the conditions of the grant have been fulfilled.

3. The ground of the plaintiff's application, is, that he is subject to irreparable loss. But the fact is not so. The defendants are amply able to respond in damage ; on the other hand, the law, whatever the *plaintiff's* ability, furnishes to the defendants no remedy, for their losses under an injunction.

The authority of the court, as invoked by the plaintiff, is upon the sole ground of a private nuisance. The cases already cited, show, to my apprehension, conclusively, that this summary interference should not be exerted. The plaintiffs citation from Story seems to favor his views, but every case cited by Story, contradicts his position. In the case of *The Charles River Bridge*, the court refused to grant the injunction on the ground of irreparable loss, but turned the party over to an action at law. The question of such loss, in this case, has not been settled. Unless the court decide that it shall not be previously settled, the injunction cannot be granted.

*W. B. S. Moor*, the plaintiff, *pro se*, in reply.

What is the true construction of the Act ? In its first section, the State grants privileges, but imposes no duties. In the second, the State enlarges the franchise, and, in the exercise of its right of eminent domain, gives authority to take private property upon compensation made therefor. The third section imposes upon the grants a condition that, within seven years, the grantees should do certain acts. This third section must be a condition subsequent, else the first act of improvement would itself be a trespass. The charter was accepted, and the grantees went into possession of the franchise, and so remained till disturbed by the acts of the defendants. A trust was thus reposed by the State, for the benefit of the public. Its object was to introduce a new and better mode of transportation upon the principal river of the State. Of the means to execute it, the trustee is the constituted

judge. In carrying out this important trust, he is entitled to the aids of the court.

As to the import of the *proviso*, it is only necessary now to say that, when the public or any individual shall make complaint of any non-fulfilment, or of injury, I trust to meet it satisfactorily. The defendants' land, for the erection of a dam, was taken, and lawfully taken, under the charter. It has added greatly to the facilities of navigation.

It is competent for the Legislature to regulate any of the public rights, or grant them to an individual. The use of this river for navigation, though above tide waters, belongs to the public.

The right of the channel, made by the plaintiff, belongs to him. The use of it must be under the direction of one mind only, in order to prevent collision. Should the defendants attempt to obstruct the channel, can it be doubted that the court would enjoin them?

The time allowed for making the required improvements extends through the twenty years. Individuals, therefore, cannot object that they are not yet all completed.

The charter is in force till annulled on *quo warranto*. When that shall be done, I will yield a cheerful obedience to the mandate.

As to the jurisdiction, the authorities and the elementary books concur in determining, that in such cases, injunctions may be issued, till trial upon the merits may be had. Possession under a statute is equivalent to ancient possession. A statute right has all the force of an ancient right. 18 Eng. Ch. R. 298, before cited.

SHEPLEY, C. J., orally. — There are certain facts in this case about which there is no controversy. An Act was passed by the Legislature of this State, approved July 30th, 1846, entitled " An Act to promote the improvement of the navigation of the Penobscot river," granting to certain persons, whose rights the present complainant has, on certain conditions, the exclusive right to navigate a portion of the Penobscot river, above tide waters, for a certain time.

Before July, 1846, that river had long been used for the running of logs, rafts, boats, &c., and had become for such purposes a public river; but the portion of it described in the Act had never been navigated by steamboats of any description, nor in any way by steam power. The complainant and his associates had expended some money, and performed certain labor on that part of the river, for the purpose of opening a passage for steamboats. During the year 1848, the complainant run steamboats on that part of the river where the navigation was not obstructed by ice, or prevented by the low state of the water, with the exception of a mile or two of railway, made by him, within the limits mentioned in the Act. And the steamboat of the respondent, Veazie, has, since that time, under his direction, and with a knowledge of the facts, navigated that portion of the river.

The complainant contends that the Act is in force; that he has complied with its conditions, and is entitled to the exclusive privilege; that the respondents have unlawfully and injuriously interfered with his rights; and that he is entitled to an injunction, to restrain them from further interference, until the final hearing of the bill.

It is said on the part of the respondents that the Act is unconstitutional and void. In this preliminary proceeding, the court do not intend to decide the question of the constitutionality of the law conclusively. To some extent that question must arise here. If, on an inspection of the Act, the court should perceive that it is doubtful whether the Legislature have the constitutional power to grant the right claimed, no injunction would be granted. But if, on inspection of the Act, nothing appears against its constitutionality, the court would not decline on that ground to issue the injunction. The state of facts may, perhaps, be different on the final hearing from what they now appear by the affidavits; and the court intend to say only, that *prima facie* the Act does not appear to be unconstitutional. It is said in Daniel's Ch. Pr., referring to 2 Bland, 461, that the object of an injunction is to keep things as they were before the interference, until the final de-

cision; but those remarks were not intended to have an appli-
cation to the state of things like those existing in the present
case.  Improvements were to be made, and, of course, altera-
tions.

It has been urged, for the respondents, that the riparian
owners have all the interests in the waters of the river not
acquired by usage, and that this is an individual, and not a
public, right ; and that, therefore, the Legislature have granted
what belongs to individuals, and not to the State.   Where the
right is common to all the community, the Legislature have
the power, as agents of the whole, to regulate the navigation
of the river. ,  As there is no mode by which the individuals,
constituting the whole community, can do it, the Legislature
may do it for them.

This is no new doctrine.  In Hale's treatise *De Jure Maris*,
a work generally approved, c. 2, prop. 3, in discussing the
prerogative in fresh water rivers, the law is thus stated ; that
" another part of the jurisdiction is to reform and punish
nuisances, to reform annoyances and obstructions to the gene-
ral right, &c., not in reference to the propriety of the river,
but of its public use." The court are not aware that this doc-
trine has been denied in any State.  The legislation has been,
in many cases, in accordance with it.  The Legislature of
this State, by an Act, authorized the changing of the circuit-
ous channel of the Saco river, by a canal, to a direct course.
The action of *Spring* v. *Russell*, (7 Greenl. 273,) for an
injury sustained by the plaintiff in running his logs, in conse-
quence of the change in the channel of the river authorized
by the Act, was founded on the principle contended for in the
defence in this case.  The court decided that the Act was
constitutional, and that the plaintiff had no remedy, but under
the provisions of the act.  A similar course of legislation has
been pursued in New Hampshire, Massachusetts and Connec-
ticut, respecting the navigation of the Connecticut and Mer-
rimac rivers, by authorizing the erection of dams, locks and
improvements.

But it is contended, for the respondents, that if the Act is

constitutional, that the complainant has not brought himself within its provisions, so as to be entitled to an exclusive right of steamboat navigation in that part of the river. The statute, approved July 30th, 1846, c. 361, is entitled "An act to promote the improvement of the navigation of the Penobscot river." The fourth section grants to William Moor and Daniel Moor, Jr., and their associates and assigns, "the sole right of navigating said river by boats propelled by steam, from said Oldtown as far up as they shall render the same navigable," "for the term of twenty years from and after the completion of the improvement, as provided in the third section of this Act," on certain conditions. That section contains three conditions. 1. To "improve the navigation of said river from Oldtown to Piscataquis falls, and from Piscataquis falls to the foot of the Five Island Rips." 2. To "build and run over said route a steamboat." 3. "And shall within said seven years build a canal and lock round said falls, or a rail road to connect the route above with the route below said falls." The first inquiry is, what is the meaning of the word *improve?* It is not defined in the Act. The first section authorizes certain things to be done, but does not require that they shall be done. What did the Legislature intend should be done by way of improvement? One engineer, employed by the respondents, tells what ought to be done and how much it would cost. Another engineer, employed by the complainant, proposes a different mode. And a witness, in his affidavit, says, that the river was navigable for a steamboat before any thing was done. And if several different persons should examine with the view of determining what should be done, and how, there is little probability that they would agree. Some Acts have described in what manner it shall be determined, when the conditions have been complied with; and in such case the grant could not take effect, until the evidence of performance appeared in the manner prescribed. In this Act there is no mode to be found by which this question is to be determined. The court, therefore, can ascertain whether the conditions have been performed only by looking

at the object the Legislature had in view. The great and leading · object manifestly was to introduce navigation by steam power on that part of the river, where it did not before exist, and to give certain advantages, to encourage its introduction. That appears to have been the main and the controlling purpose. Now, it is an undisputed fact that steamboats were built by the complainant and actually went upon the route, described in the act, for a year or more. The court consider that the actual running of the boats by the complainant on the route described in the Act, as the best proof of the performance of the prescribed conditions.

But it is alleged, and it may be that it is so, that the Legislature intended to have steamboats of more power, and affording greater facilities. But this question is not to be tried by an individual. If one can do it, another may, and there might be constant litigation, and the verdicts might be various. If the Legislature decrees that the object has not been accomplished, and that the contract has not been properly performed, they may direct it to be tried in the proper manner; and that decision will be conclusive. And such are the uniform decisions of the courts on this subject.

The next inquiry is, when did the exclusive privilege for twenty years commence? It has been said for the respondents, that the exclusive right did not attach until every thing contemplated by the Act had been fully completed; and that all this has not yet been done. For instance, that there was to be no exclusive privilege until the rail road or the canal had been fully completed. A part of the clause in the Act, taken alone, would seem to favor such construction. But the whole statute is to be taken into consideration in giving a construction to particular words of it. It could hardly be supposed to have been the intention of the Legislature, that the grantees were to be subject to competition, when feeble and struggling to carry the whole design into complete execution in all its parts, and to be free from it, and to have no competition when they became strong; nor that the grantees, by delaying the full completion, should extend their exclusive

right forward to a time when more business might be expected on the river. If the words, *to continue,* were inserted before the words *for twenty years,* it would seem to remove any doubt. But, admitting this construction to be incorrect, the exclusive right would commence when the river had been so improved that it was actually navigated by steam power, and when the required rail road had been built and used. It is said that the rail road is an insufficient and unsuitable one. If this be so, it is to be settled by the Legislature, if they think proper, by directing proceedings to vacate the charter.

Has the complainant acquired such right, and placed himself in such situation, as to require the interposition of the court to protect him by way of injunction? It is said, that before an injunction can be granted, the complainant should have had his right determined at law, or have shown it to have been of long continued existence and exercise. In certain cases this is correct. If the complainant relies on a private grant, and there is a denial of the right claimed, he must first establish his claim at law. But in those cases, where there has been a long continued and uninterrupted possession and enjoyment of the right, an injunction may issue, without a trial at law. Where a State has the right to make the grant, and it has been made, and the required conditions have been performed, it has been held to be equivalent to a determination at law, that the right exists. Unless it be a matter of doubt whether the act complained of is a nuisance, the only object of a trial at law would be to test the constitutionality of the grant from the State. In the case cited, *Croton Turnpike Co.* v. *Ryder,* 1 Johns. Ch. 610, the Chancellor says, it is sufficient that the party is in possession of a statute privilege, unless the right to make the grant is a matter of doubt. In the present case, it has already been said, that the constitutionality of the Act, for the purposes of this hearing, is not to be considered as a matter of doubt; and the decisions seem to be uniform, that the Legislature have the right to regulate the navigation on fresh water rivers. The remark, however, is not intended to be so general as to include the great rivers passing through different

States. The cases cited for the respondent, such as *Ingraham* v. *Dunnell*, (5 Metc. 118,) in Massachusetts, and *Porter* v. *Witham*, in this State, (17 Maine, 292,) say, that the court should not proceed to an injunction in doubtful cases. The principle to be derived from the authorities seems to be this. Where the statute right does not appear to be in doubt, and the act complained of is clearly a violation of it, the power of injunction may be properly exercised; but where there is doubt as to the statute right, or it is uncertain whether the acts complained of amount to a nuisance, an injunction should not be decreed until the rights become ascertained at law. And it has been holden, that where the acts complained of are or may be destructive of the rights of the complainant, an injunction may be granted.

It is contended, in behalf of the respondents, that the dam on the western side of the river is not necessary, and that the object of the complainant in placing it there was not to improve the navigation of the river, but to prevent boats, rafts, and scows, from passing up the river; and thereby to increase his own profits. [Here a reference was made to some of the affidavits, and a portion of the testimony was stated.] If one of the respondents was the riparian proprietor of the land where the dam was erected, the Act gives compensation for any land taken, and it is not apparent in what respect that fact can change the rights of the parties. It is stated in one or more affidavits, that a workman who had been in the employment of the complainant in building the dam, said it was erected to prevent the existing navigation, and to introduce the mode by steam power. The declarations of workmen employed, cannot bind the employer, if made without authority. An engineer of high reputation has examined that part of the river, at the request of the respondents, and gives his opinion that this dam is wholly unnecessary. Another engineer states, that he was employed by the complainant to determine and direct the best mode of improving the river there, and that he directed the building of that dam, and that the complainant unwillingly assented to it. This engineer

still thinks it necessary. It is said that the dam did not have the effect intended, and that on that account the rail road was built further up than it was first intended. If the grantee of the privilege acts in good faith in his attempts to accomplish the object of it, and to perform the stipulated conditions, the law will not permit any individual to destroy the works thus erected, and make himself the judge of their necessity. And while the contemplated works remain incomplete, it may not be easy to say with certainty whether they will be necessary or not. The destruction of the works erected by advice of one engineer cannot be authorized, because one or more other engineers esteem them useless. It is also said that the dam is made between the head and the foot of the falls, when it was required that the canal or rail road should be made round the falls. If the dam there was properly placed to facilitate the rising of the falls, it cannot be said to be unnecessary. Although the complainant, by the Act, is required to build a canal or rail road around the falls, yet he is authorized by it to improve the navigation of the river between the foot and the head of the falls, as well as in other places; and he may, if it be practicable, so improve the falls as to enable him to ascend them a part of the distance by means of steam power, and the rest of it by rail road or canal.

The inquiry then will arise, whether the respondents have committed the acts complained of, and which are alleged to be destructive of the rights of the complainant, granted him by the Legislature. It seems to be fully proved, and, indeed, is undisputed, that one of the respondents, under whom the others act, has built a boat propelled by steam power, and has run it on this same route, in some places in the very channel cleared by the complainant, and has done the same kind of business. This must necessarily be injurious, if not destructive, to the interest of the complainant under the legislative grant. The interference of the respondents is clearly shown or admitted.

The court have jurisdiction; the right of the complainant, under the legislative grant, is not considered, for the purpose

Moor *v.* Veazie.

of this hearing, as being doubtful; and the interference with it by the respondents is shown. Is it then the duty of the court to grant the injunction? The power to grant it should not be exercised where there is an adequate remedy at law. The inquiry then is, if the complainant should eventually prevail, has he such remedy? It is apparent, that if there be competition, there is no adequate mode of measuring the damages. There must be loss of business by the complainant, and there would be continual lawsuits. The respondents may reduce the compensation in such manner as to afford no profits to any one. Again, it must be remembered that there have been cases where a person has done business for nothing, for the sole purpose of driving the owner off from the route; and it is possible that it might be so done here. On the other hand, the consequence may be, that the boat of the defendants may become worthless, while the case is pending. But the court cannot shrink from performing its duty on that account. The respondent knew that the complainant's boats had run before he built his. The respondent knew the facts, and is presumed to know the law. One of the parties must suffer loss. The one who acts under the authority of the Legislature must not be selected to suffer, under such circumstances.

In view of the whole case, it is the unanimous opinion of the court, that the injunction must be granted.

Note. — The foregoing abstract of the points settled, and also the opinion of the court, were drawn up by Hon. John Shepley of Saco.